LINDA PAQUETTE *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. NILE COBLE *et al.*, Defendants-Appellants and Cross-Appellees.

First District (3rd Division)    No. 1—93—3313

Opinion filed April 19, 1995.

George E. Downs, of Palatine, for appellants.

Paul Harrison Stacey, of Wheaton, for appellees.

JUSTICE CERDA delivered the opinion of the court:

Defendants, Nile Coble, Sally Coble, Ronald Lam, Barbara Lam, Judith Dokmo, and Richard Dokmo, appeal from the circuit court of Cook County's judgment in favor of plaintiffs, Linda Paquette and Rodney Paquette, that a restrictive covenant permitting single-family residences to be built only on $2^1/_4$ acres or more was unenforceable. Defendants argue that the subdivision of a lot and building of homes on the resulting two lots did not change the character of the area and thereby render the restrictive covenant unenforceable. Plaintiffs cross-appeal from the denial of their motion for summary judgment. We affirm.

The issues in this declaratory judgment case are whether the subdivision of one of the four lots so changed the area as to render the restrictive covenant regarding single-family residences unenforceable and whether the restrictive covenant prohibited the subdivision of plaintiffs' lot.

Plaintiffs alleged in count I of their complaint for declaratory judgment that they owned lot two known as 115 Crooked Creek Trail in unincorporated Barrington, Illinois. Defendants Dokmo were the owners of the west half of lot three. Defendants Coble were the owners of the east half of lot three. Defendant James Doetsch was the owner of lot four. Defendants Lam were the owners of lot five.

The subdivision in which these lots was located was originally platted in 1954. Subsequent to the platting of the subdivision, a rider was recorded with each initial sale of lots two through five, and it provided in part:

"No more than one single family residence or dwelling house shall be built or erected upon any piece or parcel of the above premises, having an area of less than two and one-quarter acres."

As originally platted, lot three consisted of an area of about 1.84 acres. In May 1970, lot three was divided into two smaller lots, each less than one acre in size. Each of the resubdivided lots was improved with a single-family residence.

Plaintiffs wished to subdivide lot two, which had an area of approximately 2.07 acres. A dispute arose among plaintiffs and defendants concerning the language of the restrictive covenant. Defendants claimed that the restrictive covenant prohibited subdivision, and plaintiffs claimed that the restrictive covenant did not prohibit subdivision but only limited the number and type of structure that could be built on the resulting new parcel.

Plaintiffs alleged in count II that any prohibition against subdivision was waived as a result of the subdivision of lot three by deed.

Plaintiffs alleged in count III that the restrictive covenant was unenforceable due to the changed character of the neighborhood.

Defendant James Doetsch was dismissed with prejudice.

Plaintiffs filed a motion for summary judgment that argued that the restrictive covenant did not prohibit subdivision of lot two and did not establish a minimum lot size. The trial court denied the motion, and a trial was held.

The following are the additional relevant facts. Plaintiffs' lot two is located in the northeast quarter of the subdivision. Plaintiffs purchased lot two in 1990. The two properties created by subdividing lot two are slightly larger than one acre. Lot five is south of lot two and is $2^1/4$ acres. Defendants Lam purchased lot five in 1989. Lot four is west of lot five and is identical in area to lot five. Lot three is located north of lot four and west of lot two. Lot three was divided in half to create two lots each smaller than one acre. Nile Coble purchased lot three in 1979. To the east of lots two and five is forest preserve. The forest preserve also is partially on the south boundary of lot five. North of lots three and two is lot one, which had been subdivided into 10 parcels. Each of the 10 parcels had a single-family home, and five of the parcels were smaller than one acre in size. Lot one was not covered by the restrictive covenant. The nature of the property to the immediate west of lots three and four is not stated in the record. A copy of a map of the involved lots and the immediately surrounding area is reproduced at the end of this opinion.

Nile Coble was told at the closing of his purchase of one half of lot three that there was a restrictive covenant on the other properties and that his property had been divided previously. Ronald Lam did not know about the restrictive covenant until after he purchased lot five in 1989.

Ronald Lam testified that the building of a home on subdivided lot two would destroy the natural wooded beauty of the area.

An order of the trial court found the following. The subdivision of lot three materially changed the area, and therefore the restrictive covenant was unenforceable. Any deed conveying lot two was to

contain two restrictions: (1) an additional grant of a drainage easement of 15 feet in width from the north half of lot two; and (2) any single-family home constructed upon the newly created parcel would be subject to a setback requirement of a minimum of a 30-foot side lot line relative to lot five.

Defendants appealed, and plaintiffs cross-appealed.

Plaintiffs moved to dismiss defendants' appeal because plaintiffs subdivided their lot by deed and sale after the notice of appeal was filed, and plaintiffs argued that therefore defendants' appeal was moot. As the new owner was not a party to the lower court proceedings, the judgment of the appellate court would not affect the new owner's title, pursuant to Supreme Court Rule 305 (134 Ill. 2d R. 305). Defendants did not request a stay pursuant to Supreme Court Rule 305 or post an appeal bond to stay the effect of the judgment.

Defendants' response to the motion to dismiss argued that their appeal was not moot because plaintiffs could be liable for damages to defendants' property resulting from the violation of the restrictive covenant.

■ Supreme Court Rule 305(i), governing the effect on interests in property of the failure to obtain a stay of enforcement, states in relevant part:

"If a stay is not perfected within 30 days of the entry of the judgment appealed from, or within any extension of time granted ***, the reversal or modification of the judgment does not affect the right, title, or interest of any person who is not a party to the action in or to any real or personal property that is acquired after the judgment becomes final and before the judgment is stayed; nor shall the reversal or modification affect any right of any person who is not a party to the action under or by virtue of any certificate of sale issued pursuant to a sale based on the judgment and before the judgment is stayed." 134 Ill. 2d R. 305(i).

■ An issue is moot where no actual rights or interests of the parties remain or where events occur that render it impossible for the reviewing court to grant effective relief. (*Rabel v. Illinois Wesleyan University* (1987), 161 Ill. App. 3d 348, 363, 514 N.E.2d 552.) A reversal of the trial court on the issue of the enforceability of the restrictive covenant would not affect the new owner's title to the property because of Supreme Court Rule 305(i). But the sale of the property would not make it impossible for this court to grant relief in the form of a judgment that a home could not be built on the new subdivided lot two, based on an interpretation of the restrictive covenant. The court could also award damages. The case is not moot, and plaintiffs' motion to dismiss defendants' appeal is denied.

■ Defendants first argue that the object of the restrictive covenant was to maintain a tranquil and natural state and to assure that homes would not be built on areas smaller than $2^1/_4$ acres. The resubdivision of one of the four lots did not affect the subdivision to the degree that the purpose to provide tranquil enjoyment by the owners was no longer possible. The trial court erred in not upholding the restrictive covenant.

Plaintiffs respond that the restrictive covenant did not expressly prohibit subdivision of any parcel. It only provided that no more than one residence could be built on a parcel of less than $2^1/_4$ acres. The covenant did not provide for a minimum lot size. The covenant contemplated subdivision because it referred to any "piece" or parcel.

We interpret the restrictive covenant as not expressly prohibiting subdivision. The restrictive covenant only prohibits building more than one single-family dwelling on an area smaller than $2^1/_4$ acres.

Plaintiffs argue the following. The trial court erred in denying their motion for summary judgment that the restrictive covenant did not prohibit subdivision of their lot. The interpretation of restrictive covenants was a matter of law.

We first note the general rule that, when a denied motion for summary judgment is then decided at trial, the order denying summary judgment merges into the judgment entered at trial so that the order is not appealable. (*Battles v. La Salle National Bank* (1992), 240 Ill. App. 3d 550, 558, 608 N.E.2d 438.) The rationale for the rule is that it would be unjust to the prevailing party because she won a judgment after the evidence was more completely presented at trial. (*Battles*, 240 Ill. App. 3d at 558.) The rationale for the rule does not apply here where the parties who prevailed at trial are arguing on appeal the court's error in denying summary judgment to them.

We hold that the trial court did not err in denying plaintiffs' motion for summary judgment because, as discussed above, the restrictive covenant did prohibit building more than a single-family dwelling on an area smaller than $2^1/_4$ acres, and the total area of lot two was only 2.07 acres.

Defendants argue that the trial court erred in finding the restrictive covenant unenforceable because the subdivision of lot three did not change the character of the area. Plaintiffs rely in support of their position that the restrictive covenant was unenforceable on the subdivision of lot three and on the residential development of the surrounding areas.

In *Burden v. Lobdell* (1968), 93 Ill. App. 2d 476, 235 N.E.2d 660, in which plaintiffs sought to remove restrictive covenants concerning

the residential use of a subdivision, the court adopted the following statements from Annotation, 4 A.L.R.2d 1111, 1114 (1949):

" 'While restrictions in deeds are not favored in law, they will be construed as found, and it is a primary rule that a building restriction will be upheld wherever it remains of substantial benefit to the parties objecting to its violation, provided they are not estopped by their conduct from making such objections. Consequently, for a change in neighborhood conditions to relieve against enforcement of a restriction and especially to constitute a sufficient ground for cancellation or modification of a restriction, such change must be so radical and complete as to render the restriction unreasonable, confiscatory, and discriminatory, or as practically to destroy the purpose for which the restriction was originally imposed, relief from an onerous building restriction because of a change in the character of the neighborhood being granted only if it can be done without causing damage to others who have purchased their property in the restricted area in reliance on the restriction.' " *Burden*, 93 Ill. App. 2d at 482.

We affirm the trial court's decision that the subdivision of one of the other four lots in violation of the restrictive covenant altered the character of the neighborhood so that the purpose of the covenant could no longer be achieved. There were only four lots in the subdivision governed by the restrictive covenant, and the building on lot three, a portion comprising one-fourth of the subdivision, was sufficient to render the restrictive covenant unenforceable. Also, two of the four original lots (lots two and three) violated the restrictive covenant because residences were built on areas too small in size. We do not rely upon the nature of the development of the areas outside the subdivision covered by the restrictive covenant. The presence of the buildings on lot three destroyed the restrictive covenant's purpose of permitting buildings only on spacious lots $2^1/_4$ acres or larger in size.

Although defendants Lam will be the most affected of the defendants by the building on the new portion of lot two, they did not purchase in reliance on the restrictive covenant. There was no evidence that defendants Dokmo relied on the restrictive covenant. Nile Coble testified that he was told about a restrictive covenant on the other lots, which is incorrect information because the restrictive covenant also covered Coble's lot. Coble did not testify that he relied in purchasing on the restrictive covenant on minimum lot size for building. In fact, Coble purchased land that violated the minimum lot size requirement for building.

We also note that defendants' predecessors in title did not enforce the restrictive covenant to prevent the building of homes on lot three. Acquiescence in prior violations of a particular restriction by a party

will result in the party's waiver of any right to enforce the restriction. (*Watts v. Fritz* (1963), 29 Ill. 2d 517, 523, 194 N.E.2d 276.) Therefore, the predecessors' acquiescence in the violation of the restrictive covenant estopped defendants from now seeking to enforce the restrictive covenant.

We also affirm the trial court's order placing restrictions for a drainage easement and establishing a distance limitation on building a second home on the lot in question.

The judgment of the trial court is affirmed.

Affirmed.

GREIMAN, P.J., and RIZZI, J., concur.